## Gilkyson *against* Larue.

The acknowledgment of a debt is evidence of a promise; but to avoid the statute of limitations it ought to be plain and express, and beyond all doubt. It is not sufficient if it is merely an inferential promise not to plead the statute made without consideration; nor where it is a disclaimer after suit brought and judgment recovered, of an intention to plead the statute, accompanied by an allegation that the judgment entered was for too much.

A Court of Common Pleas, when it opens a judgment on affidavit of the defendant, ought to prescribe terms so as to confine the party to the grounds of defence set forth in his affidavit.

ERROR to the Common Pleas of *Bucks* county, in which suit was brought to April term 1839 by Samuel Gilkyson (on whose death his executors were substituted) against Aaron Larue, and a verdict and judgment rendered for the defendant. The suit was on a promissory note dated April 18th 1829, made by the defendant in favour of James Gilkyson, promising to pay the sum of $850 with interest at 5 per cent. until paid. The defendant pleaded *non assumpsit* and payment with leave, &c., and *non assumpsit infra sex annos*. Replication that he did assume within six years. The plaintiffs afterwards added the replication " that James Gilkyson, at the time when the said cause of action in the declaration mentioned was given, accrued, &c. to the said James, was *non compos mentis*, and was *non compos mentis* from the time said cause of action accrued until the institution of said suit, viz., on the 5th March 1839." On this replication the defendant took issue.

On the trial at November term 1843, the plaintiffs proved the execution of the note and offered it in evidence. The defendant objected, and the court said they would postpone the admission of the note until evidence was heard-taking the case out of the statute. The plaintiffs then offered the testimony of Judge Hart, as stated below; but the defendant objected to it on the ground that no evidence could in the state of the pleading be given of any assumption or acknowledgment, and also that it did not appear the witness had any authority to call on the defendant, for the testator was then in full life, and that such declarations were not evidence to take the case out of the statute. The court said they would hear the evidence and overruled the objection, and sealed an exception.

The witness then testified : "About the year 1836, in conse-
quence of a question asked me by Elias Gilkyson, I had reference
to my uncle's (James Gilkyson) will, which I had in keeping;
when looking to that particular point so as to answer his question,
a circumstance of Aaron Larue's note, with which I was partially
acquainted, arose in my mind. I never had seen it. I suspected
from the manner notes were usually drawn, it was a note without
a seal. I was apprehensive from what I understood was the state
of my uncle's mind, some difficulty might arise on the subject. In
the course of a day or two I went to see Mr Gilkyson, to see what
the state of his mind was. I went and sat with him two or three
hours ; found his mind totally gone. He did not know me, not-
withstanding our former intimacy. I think Samuel Gilkyson, his
son, with whom he resided, was not at home ; but after I had
satisfied myself nothing could be done with the old gentleman,
when Samuel came home, I told him the circumstances of the case
and what I had come for, and asked him to look at the note. (My
intention was to state my fears to the old man, and get him to
provide by codicil to the will to cure the difficulty. I had the
will with me.) I ascertained there was no seal to the note. I
then proposed to Samuel to go to Aaron Larue, who lived about a
mile and a half off. We went, and as nearly as I can recollect, I
stated all the circumstances I have now stated, to Larue, and my
reason for coming. After I had done so, Larue hesitated before
he made any answer. I told him my object was to see whether
he would agree not to take any advantage of the Statute of Limita-
tion. If he would not agree to it, I would return and stay with
my uncle at least a week, if necessary, to see whether I could find
him in a situation to make any alteration, if he thought proper to
do so, in his will to cure the case. Larue stated distinctly that
he had no wish to do anything that was wrong in the business ;
that he would not take advantage of the Statute of Limitation with
respect to the note. I think this was in the fall of 1836. Aaron's
wife was present, and said it was very hard they should pay all
the interest. This was in Aaron's presence, and, my impression
is, after what Aaron had said, but am not certain. Aaron made
no answer to her observation. I was satisfied with what had
passed, and went away and staid all night with Samuel Gilkyson,
and returned home immediately the next morning. I never thought
of it afterwards until the note was contested. I was satisfied he
would not take advantage of the statute. I drew the will of James
Gilkyson in 1826. I was consulted when he had any business to
transact : had not a great deal to transact. When together, he
consulted me in any business he had to do. He sent for me to
draw his will in 1832. I do not know of any other person whom
he advised or consulted with. I presume Larue knew I did busi-
ness for my uncle : he had an opportunity of knowing, and I have
no doubt of it."

[Gilkyson *v.* Larue.]

Cross-examined. " This was in 1836. The writing of the will in 1832 or 1833 was the last business I did for James Gilkyson. I called on Larue as the friend of the family, and with no other authority. I did not tell Larue I called as the agent of James Gilkyson. He was then incapable of appointing an agent. I then resided 18 miles from James Gilkyson. When I wrote the will, I resided five miles nearer. I thought him of sound mind in 1832. Samuel Gilkyson, Larue and Rachel, his wife, were present, and his daughter, part of the time. I had not the note, and as far as I know, it was not there. It was not exhibited to Larue. The date was not mentioned. I did not know the date. The amount was not mentioned. I do not know who drew the note. I don't know who did his business in 1829. The principal business I did was in relation to his will. It was in relation to his will he stated to me the circumstances of the note, and his transactions with his children several times. All the business I did was in consequence of writing his will."

Re-examined. " My knowledge about the note was from James Gilkyson when I drew the second will about 1831. I said before that it was in consequence of that knowledge I called on Larue. I knew of no other note held by the old gentleman against Larue. This note was the subject-matter of my conversation with Larue. I drew all his wills. I was his agent to draw his wills."

The plaintiffs then offered the testimony of E. T. M'Dowell, Esq. as stated below; but the defendant objected to it on the ground that it was to prove declarations subsequent to the suit, which could not support a promise sufficient to maintain the action. The court said they would hear the evidence, and consider it again when the note was again offered. The defendant excepted, and a bill was sealed.

The witness testified : " I brought the suit for the committee of James Gilkyson, who was John Yardley. We used the name of James Gilkyson. I believe it was brought to April term. On the return of the writ I entered judgment by default, Larue not appearing. Some time after that, between April term and the following term, Mr Ross and Mr Larue called on me and wished me to consent to open the judgment, alleging as a reason that there had been an arrangement or understanding between Mr Yardley and Larue, by which Larue understood it was not necessary for him to appear to the suit. I had no knowledge of the fact stated by Larue, for Mr Yardley refused to consent to open the judgment. I stated also to Larue, I believed or supposed he only wanted to plead the Statute of Limitation. He very expressly and frankly denied the charge, and stated that the judgment had been entered for too much; that he never was or ought not to pay interest. The matter of complaint was the interest, alleging at the same time all he wanted was to have it properly settled. We separated, and on application of Mr Ross the judgment was opened by the court.

[Gilkyson v. Larue.]

When I accused him of wanting to plead the statute, he said he did not; that the judgment was for too much. Said nothing against the principal, unless he intended it by saying the judgment was for too much. I do not recollect any other matter of complaint except the interest. We made no agreement."

James Gilkyson testified that he had a conversation with Larue about the 1st April 1839. Larue wanted to know whether it was necessary for him to appear at April court on the return of the writ. Witness told him it would be necessary for him to employ counsel, but not necessary for him to be there: counsel would prevent judgment going by default.

The note was then offered, but was objected to by the defendant, and the court rejected it, believing the weight of authority was against the plaintiff's right to recover, and saying they admitted all the plaintiff's evidence to enable this court to have the case in all its ·bearings before them, and so judge of the plaintiff's whole cause.

Errors assigned:

1. The court erred in rejecting the note.

2. They should have submitted the note and evidence of Judge Hart and E. T. M'Dowell, Esq. to the jury.

3. They should have submitted Judge Hart's testimony to the jury.

*Chapman,* for the plaintiffs in error, insisted that the court erred in precluding the plaintiff from reading the note to the jury after its execution had been proved. The question whether it was barred by the statute was a subsequent consideration, and was for the jury to decide under the direction of the court. Where the conduct and expressions of the defendant at the time of making the acknowledgment are equivocal or ambiguous, it is a question of fact for the jury whether they amount to such an admission of a debt as will raise the presumption of a new promise. *Church v. Feterow,* (2 *P. R.* 306).

But on the evidence there was sufficient proof of an acknowledgment. Two witnesses showed an admission of the principal sum, and in relation to the same note. The declaration to Hart that he would not take advantage of the statute of limitations, and to M'Dowell to the same effect, and that the judgment was for too much only so far as respected the interest, amount to a subsequent acknowledgment. *Berghaus v. Calhoun,* (6 *Watts* 220); *Allison v. James,* (9 *Watts* 380); *Magee v. Magee,* (10 *Watts* 172); *Gleim v. Rise,* (6 *Watts* 44); *Gallagher v. Milligan,* (3 *P. R.* 179).

*Ross,* contra, contended that the late course of proceeding was the one followed by the court below. It is recognised as proper in *Magee v. Magee,* (10 *Watts* 172, 5), and *Fritz v. Thomas,* (1 *Whart.* 66). If the court ought to have instructed the jury that

the evidence was not sufficient, they were bound to reject it. Now the acknowledgment was not established by Hart, for various reasons. He had no authority; and an acknowledgment, to affect the party, must be to the owner or his agent, known as such: conversations with neighbours and strangers must be disregarded. *Farmers' and Mechanics' Bank* v. *Wilson*, (10 *Watts* 262). The acknowledgment, moreover, must be in favour of one in existence to receive it; *Blansh. Lim.* 168; *Ward* v. *Hunter*, (6 *Taunt.* 210); whereas here James Gilkyson was mentally extinct. There is no certainty that this was the note referred to. Again, when Hart called, the six years had elapsed; it was not a subsisting debt; and there must in such case be an express promise to pay. But the defendant did not promise to pay, nor declare he had no defence whatever. He may have had some other, and lost the proof of it by the death of witnesses. A promise not to plead payment would not preclude him from pleading it: so neither does a promise not to plead the Statute of Limitations. Nor was there any consideration for such promise. M'Dowell's evidence was also properly rejected. It went to show an acknowledgment after suit brought. It amounts to nothing more than that the defendant denied part of the claim; and it results merely in this, that M'Dowell refused to open the judgment, and the parties stood as they were before.

To show that the evidence did not make out a sufficient acknowledgment, and it would have been wrong to submit such a case to the jury, he referred to 2 *Stark. Ev.* 482; *Church* v. *Feterow*, (2 *P. R.* 305); *Gallagher* v. *Milligan*, (3 *P. R.* 179); *Hogan* v. *Bear*, (5 *Watts* 111); *Gleim* v. *Rise*, (6 *Watts* 44); *Berghaus* v. *Calhoun*, (*Ibid.* 219); *Allison* v. *James*, (9 *Watts* 380); *Magee* v. *Magee*, (10 *Watts* 172); *Hay* v. *Kramer*, (2 *Watts & Serg.* 139).

PER CURIAM.—The loss of this debt is due to the court which opened the judgment, without prescribing as a condition of its interference that the defendant should not plead the Statute of Limitations. According to the testimony of Mr M'Dowell, the allegation on which the court proceeded was that the judgment ought not to have been for interest, and this accompanied by an express disclaimer of a design to plead the statute; yet the judgment was opened generally; the statute has been pleaded; and a fair debt has been lost by it. The Courts of Common Pleas seem, to think they have no power to impose terms, or that it is not their business to exercise it; whereas it is clear that their power is discretionary, and they ought to prescribe the issue so as to draw into contest no more than the matters alleged for ground of defence in the affidavit. On the pleadings, however, the only question before us is whether there was evidence of a subsequent promise to go to the jury. The acknowledgment of a debt is evidence of a promise; but it ought to be plain, unambiguous,

VI. — 28　　　　　　T

[Gilkyson v. Larue.]

express, and so distinct and palpable in its extent and form as to preclude hesitation. But the acknowledgment here was only inferential, if indeed it could be inferred from an agreement without consideration not to plead the statute, which however was no disclaimer of all other grounds of defence. The defendant's disclaimer of an intention to plead the statute after the suit was brought, accompanied with an allegation that the judgment was for too much, would come too late for the purpose of the action, even if it were evidence of a subsequent promise; for it would fail to prove the existence of a cause of action at the suing out of the writ. We cannot say, therefore, that the court erred in excluding the evidence.

Judgment affirmed.