## Johns *versus* Lantz.

1. An accountant at the request of parties stated the accounts between them as to mill accounts and made the calculation in the presence of the debtor, it was read over to him, he was satisfied with the arrangement and ordered the accountant as his agent, to go with the creditor and ascertain from a miller the price of grain; he ascertained the price and the balance due; after the mill accounts were settled they were to lie over till they had a settlement of their other accounts. *Held,* to be evidence for the jury of an acknowledgment to take the case out of the Statute of Limitations.

2. To take a case out of the statute, the acknowledgment must be so distinct and palpable in its extent and form as to preclude hesitation.

3. A naked admission of indebtedness, not indicating the amount or nature of the debt or a promise to pay something without a reference to the sum to be paid is insufficient.

4. A clear, distinct and unequivocal acknowledgment of a debt as an existing obligation, identifying it so that there can be no mistake as to what it refers, made to a creditor or his agent, takes a case out of the statute.

5. If a debtor and creditor in the presence of a witness examine their books and state an account, and the debtor assents to it, it would be such acknowledgment.

November 16th 1869. Before Thompson, C. J., Read, Agnew, Sharswood and Williams, JJ.

Error to the Court of Common Pleas of *Greene county:* No. 167, to October and November Term 1869.

This was an action of assumpsit brought, November 27th 1866, by Samuel Johns against Mary Lantz, administrator, &c., of Andrew Lantz, deceased.

The pleas were non assumpsit, non assumpsit *infra sex annos,* &c.

Andrew Lantz owned a flouring-mill. The plaintiff had been his miller for about four years, he was to have one-third of the tolls, and Lantz was to take Johns's share of the tolls and pay him for them; the last item of the account was dated April 3d 1854.

The plaintiff read the deposition of Dr. Samuel Dodd. He testified that in the early part of 1862 he was employed by Lantz to settle the mill books with the plaintiff. They ascertained the number of bushels Lantz had got, the price was to be fixed by Peter Brown's mill books; the settlement was made in Lantz's house and in his presence. Witness afterwards, on behalf of

[Johns v. Lantz.]

Lantz and Johns, examined Brown's mill book. He made a calculation of the tolls taken by Johns and delivered to Lantz, which was put down on a paper. Witness testified : "It (the calculation) was made out in presence of Mr. Lantz and read over by him ; he was satisfied with the arrangement and ordered me as his agent to go with Mr. Johns to Hook's and ascertain the prices of the grain at the same periods on Hook's mill book. I went and Mr. Johns went with me, and we ascertained the prices of grain as directed; * * * the balance then ascertained was $153.11 in favor of Johns." On cross-examination witness said, "The mill books were to be settled, and when we settled the mill accounts it was laid over till they had a settlement of their other accounts."

In the winter of 1865–1866, after the death of Lantz there was a settlement by referees chosen by the parties between the plaintiff and defendant. The balance on that settlement was for $200 in favor of the plaintiff. The account on the mill books was left out because they were lost, and the administrator was unwilling to settle without them. The copy of that account lacked the affidavit of Dr. Dodd as to its correctness. The parties agreed that when Dodd came home from the army and made affidavit that it was a true copy, that the defendant would pay the plaintiff the mill account.

The defendants gave evidence in answer to the plaintiff's case.

The court (Gilmore, P. J.) charged that plaintiff's claim was barred by the Statute of Limitations, and that the evidence if all believed, was not sufficient to relieve the case from the operation of the statute. The evidence of Dodd in chief would not be sufficient and his own cross-examination shows that the amount coming on the mill book was nothing more than an item to be taken into account on a full settlement.

The verdict was for the defendant.

The plaintiff took a writ of error and assigned the charge for error.

*R. W. Downey*, for plaintiff in error.—Here was a settlement made, a balance struck and the amount due ascertained : Cowan *v.* Magowan, Wall. 66.

*A. A. Purman*, for defendant in error.—To take a case out of the statute the acknowledgment should be clear, unambiguous and express : Allison *v.* James, 9 Watts 381 ; Gilkyson *v.* Larue, 6 W. & S. 217 ; Suter *v.* Sheeler, 10 Harris 312; and without qualification : Kensington Bank *v.* Patton, 2 Harris 481 ; Morgan *v.* Walton, 4 Barr 322 ; Burr *v.* Burr, 2 Casey 284 ; Emerson *v.* Miller, 3 Id. 279 ; Weaver *v.* Weaver, 4 P. F. Smith 152 ; Harbolds *v.* Kuntz, 4 Harris 210 ; Shaffer *v.* Shaffer, 5 Wright 51. A promise by an administrator is not sufficient : Clark *v.* Maguire, 11 Casey 259.

The opinion of the court was delivered, January 3d 1870, by

SHARSWOOD, J.—The decisions of this court apply very strict rules to acknowledgments to take a case out of the Statute of Limitations, and very rightly so. We mean to adhere to them in letter and spirit. The present state of the law was well summed up by our brother Agnew in one of the latest: " In order to take a case out of the operation of the statute, the acknowledgment of the debt must be clear, distinct and unequivocal. It must be so distinct and palpable in its extent and form as to preclude hesitation. A naked admission of indebtedness, without anything indicating the amount or nature of the debt, or a promise to pay something without a reference to the sum to be paid, is insufficient:" Wolfsenberger *v.* Young, 11 Wright 516. No case, however, has ever gone the length of saying that there must be an express promise to pay in terms, and unless we are prepared to go that length we must reverse this judgment. To hold so we must overrule Hazlebaker *v.* Reeves, 2 Jones 264, and Davis *v.* Steiner, 2 Harris 275, in both of which acknowledgments without a promise were sustained, and the acknowledgments themselves by no means so clear, distinct and unequivocal as that presented on this record. What shall be done with the many cases in which the rule of law has been stated in terms which either expressly, or by clear implication, exclude the necessity of a promise to pay ? Cowan *v.* Magowan, Wall. 65 ; Fries *v.* Boisselet, 9 S. & R. 128 ; Eckert *v.* Wilson, 12 Id. 393 ; Bailey *v.* Bailey, 14 Id. 195 ; Gilkyson *v.* Larue, 6 W. & S. 213. It is still the law that a clear, distinct and unequivocal acknowledgment of a debt as an existing obligation, identifying it so that there can be no mistake as to what it refers to, made to the creditor or his agent, takes a case out of the statute. A debtor and creditor sit down together, in the presence of a witness, examine their books, and state an account of the several items of indebtedness in writing, and the debtor assents to it as correct. Would it add anything to the force of this transaction if he added, " I promise to pay you this amount ?" Yet that is exactly this case upon the testimony of the witness, Dr. Dodd. It does not vary it that the prices of the grain were not ascertained at the time. The decedent expressly authorized Dr. Dodd to ascertain them, at the same periods, from the mill book of a neighboring mill, which he did. Nor does the fact stated by the witness, " when we settled the mill account it was laid over till they had a settlement of the other accounts," in any degree disturb the clear, distinct and unequivocal character of the acknowledgment. At most it was an agreement to postpone the payment until those other accounts were settled. Those other accounts were settled with the executors, leaving out the mill account in question, and the reason it was not included was that the mill books were lost and the executors were unwilling to admit

[Johns v. Lantz.]

the copy produced, without an affidavit of its correctness by the witness, Dr. Dodd, who was then absent in the army. We think that the evidence should have been submitted to the jury.

Judgment reversed, and *venire facias de novo* awarded.