Estate of Catharine R. Souder, Deceased. Appeal of Joseph W. Souder, Margaret Manderson and Harry W. Williams, Executors, and Joseph W. Souder, Individually.

*Decedent's estate—Will—Debt—Extinguishment—Evidence.*

Testatrix by her will bequeathed money alleged to be due her from her brother and for which she held certain collateral security. The brother, who was an executor, legatee and devisee under the will, testified that part of the security referred to had been accepted by decedent in full satisfaction of such indebtedness; that subsequently he gave her additional security with the understanding that all sums realized from all the collateral which she held over and above his indebtedness to her should be returned to him. It also appeared that in the inventory of the executors an item was contained as follows: "Indebtedness of J. W. Souder to decedent of $7,000 secured by sundry collaterals of uncertain and unknown value, face value $7,000." *Held*, that the evidence was insufficient to prove a payment of the indebtedness.

*Statute of limitations—When tolled—Transfer of stock as collateral.*

The indebtedness was not barred by the statute of limitations, because the transfer of the stock as collateral security, made within six years of the death of the testatrix, was a distinct acknowledgment of the debt from which a promise to pay was reasonably deducible.

Argued Jan. 28, 1895. Appeal No. 188, July T., 1894, by Joseph W. Souder, Margaret Manderson and Harry N. Williams, executors, and Joseph W. Souder, individually, from decree of O. C., Phila. Co., sustaining certain exceptions of the Penn Widows' Asylum and other legatees, to the adjudication of the auditing judge. Before GREEN, WILLIAMS, McCOLLUM, MITCHELL and FELL, JJ. Affirmed.

Exceptions to adjudication of auditing judge.

On the audit of the executors' account before PENROSE, J., an adjudication was filed of which the following is a part:

" The provision with regard to the $7,000, payable by Joseph W. Souder, is as follows :

" ' When my brother pays the Seven thousand dollars he owes me or sells the share he gave me on the property at Chester, he is to receive all the papers he gave me as security. I wish the money disposed of as follows: I give, devise, and bequeath to

Central M. E. Church $1,000 to place those members in the Methodist Home that have not the means themselves ; . . . . to the Ladies' Home Missionary Society of the M. E. Church $3,000 ; to build a Home to educate the poor children of the South, to be called the Souder Home in honor of my mother; . . . . to the Ladies Foreign Missionary Society $500 ; . . . . to the Managers who are raising a seaside home for invalid females $500 ; . . . . to the Methodist Episcopal Hospital $500 ; . . . . to the Newsboys' Home $100 ; to the Society for the Prevention of Cruelty to Animals $200 ; . . . . to the Managers who have a home in West Philadelphia for females who have been discharged from the Hospital $200 ; . . . . to the Managers of the Midnight Mission $200 ; . . . . to the Penn Widows' Asylum $500,' etc.

" These legacies, in the opinion of the auditing judge, are a specific gift of the money to be paid by the brother, Joseph W. Souder; but whether specific, demonstrative or general, they are not payable until the debt (so-called) is paid or, at least, is or becomes collectible. It is not pretended that it has been paid, and the only question for consideration is, could it at any time since the death of the testatrix have been collected ?

" The will was executed June 17, 1886. Prior to Jan. 24, 1879, Joseph W. Souder was indebted to his sister, the testatrix, in the sum of $7,000. The origin or nature of the debt was not stated to the auditing judge, but it does not appear that the creditor held any evidence of its existence, or that it was anything else than a mere simple contract debt. At the date mentioned, Joseph W. Souder made to his sister, in consideration of the debt, an absolute conveyance of his interest in the estate of a brother, Benjamin K. Souder, who had died some time previously. In March, 1882, Mr. Souder, recognizing the fact that the property included in the deed was not likely to pay the debt for which it had been accepted, transferred to his sister 140 shares of stock of the Chester Land Improvement Company, of the par value of $50.00 per share. This stock had no market value, either then or at the present time; but the property belonging to the company is said to be of a character to ultimately yield large profits, and Mr. Souder testified that it is his belief the stock thus assigned to the testatrix will be worth $20,000. It was therefore agreed at the time of the

assignment that if he should ever pay the debt, or if upon the sale of the stock it should be paid, the testatrix, in the one case, would reassign to him, and in the other that she would give him the surplus. After the conveyance, according to the testimony, there was no right on the part of the creditor to demand payment of the debt. It was an absolute assignment in extinguishment of the debt, with a collateral agreement to reassign, as in Spering's Appeal, 10 Smith, 199; Lauman's App., 18 Smith, 88; Haines v. Thomson, 20 Smith, 434; R. R. Co. v. Casey, 29 Smith, 84; etc.

"The fact that the will speaks of the debt as still existing does not, of course, affect the rights of the other party to the transaction; and the testimony of Mr. Souder, who was called for cross-examination by counsel representing the legatees, is positive and uncontradicted that the debt was ended, qua debt; and that his right to a reconveyance or reassignment was dependent upon an optional payment by him—a right, however, which he regards as valuable and does not desire to relinquish. It may be added that the debt, as a debt, appears to have been barred by the statute of limitations at the death of the testatrix, even if it had not been previously extinguished by the arrangement between the parties.

"As, however, the amount of the debt may at some future time be paid by the former debtor in order to avail himself of the provision of the will as to reassignment to him, it is properly mentioned in the inventory and account as an asset; but as it has not yet been paid, it is equally proper to credit the accountants with it as not available for present distribution."

To this finding exceptions were filed which were sustained in an opinion by ASHMAN, J., which was in part as follows:

" The clause in the will out of which the matter in dispute arose, is as follows: ' I give, devise and bequeath to my brother, J. W. Souder, my three shares in the Cranberry Bogs, situate in Monmouth county, New Jersey. When my brother pays the $7,000 he owes me, or sells the share he gave me on the property at Chester, he is to receive all the papers that he gave me as security. I wish the money disposed of as follows: . . . . to the Ladies' Home Missionary Society,' etc.

" The executors, of whom the brother was one, charged themselves with the above sum as a debt due by the brother, and

VOL. CLXIX—16

claimed credit in a similar sum as for a debt not collected ; and the only question, aside from the character of the legacies as specific or demonstrative, which would seem likely to have arisen, was whether the debt was or was not collectible.

" The debtor, however, was called by the legatees as for cross-examination, and upon his testimony, the auditing judge decided that the debt no longer existed.   The witness declared that, being indebted to the testatrix, he conveyed to her three houses on Oxford street, which she afterwards, in 1878 or 1880, sold, but failed to realize upon by reason of the incumbrances. He then, on Jan. 24, 1879, conveyed to her by deed, the consideration of which was expressed to be $7,000, his undivided interest in certain real estate which he had derived from his deceased brother.   The property was unproductive, and, on March 30, 1882, he caused to be assigned to the testatrix one hundred and forty shares of stock in the Chester Land and Improvement Company of the par value per share of $50.00 but which, he said, had at the time no market value.   He declared that the deed of Jan. 24, 1879, was delivered in payment of the debt, and that the transfer of the stock, three years afterwards, was made with the understanding that out of the proceeds, when sold, the testatrix should receive $7,000, and should give him the balance, together with a reconveyance of the properties. If this testimony can be accepted as unimpeached, it established as a fact that the debt was extinguished in 1879, and that the subsequent transfer of stock was founded upon the consideration that the grantee would reconvey.   In that event, the case is at one with Haines v. Thompson, 70 Pa. 434, where the deed from the debtor to the creditor was absolute in its terms, and the alleged defeasance bore a much later date, and where the transaction was decided to have been a sale.

" It is very clear, however, that the testatrix regarded the debt as a continuing obligation, when, four years after the date of the deed she executed her will, and recited in it ' the $7,000 which he owes me,' and described the deed of Jan. 24, 1879, and assignment of stock as ' the papers that he gave me as security.'   The person whom she thus named as her debtor claims as legatee and devisee under her will, and he cannot accept one part of the instrument and repudiate another part. It is a remarkable circumstance that while he insists that the

deed of 1879.was in payment of the debt, he makes no such claim for the deed of the Oxford street houses which preceded it, and leaves it open to conjecture whether that conveyance passed by way of part payment of the debt or as collateral security for the debt, or whether it denoted a pure gift by him or a purchase by the testatrix. There is absolutely no evidence whatever outside of his own statements to rebut the presumption that both deeds represented out and out sales for a consideration, of which the indebtedness of the grantor formed no part. But these declarations of the debtor are exactly balanced by the testamentary declarations of the creditor. They are, moreover, irreconcilable with his transactions with the testatrix after the conveyances in question had been made. It is possible that a man may be found who will consent to part with his property as collateral security for a debt which he no longer owes, but it is not probable ; and something more than his oath will be required to show that his indebtedness had been canceled before he undertook to secure it. The declarations which the legatee now makes are at variance even with his own statements of record. In the inventory which he filed in December, 1886, he set out as an asset of the estate the following: 'J. W. Souder, due decedent with collateral $7,000.' If we accept the testimony of the legatee, we throw into a case which, so far as the record goes, is perfectly simple and consistent in all its parts, an element of confusion and incongruity. It is conceded that the decedent was her brother's creditor to the extent of $7,000, and it is not pretended that she ever pressed him for payment. It would not be extraordinary that she should purchase from him some small properties, while she permitted his indebtedness to remain, nor that she should afterwards accept from him as collateral security for that debt stock which had in it a large prospective value. The will which she wrote, and the inventory which the debtor filed, are both in harmony with this theory, and are inexplicable on any other. In opposition thereto, the debtor would have us believe that he paid his debt by a conveyance of properties whose value was far below the amount of the debt; and that years afterwards he assigned, by an instrument absolute in its terms, stock which he asserted was intrinsically worth $20,000 to secure the debt from which he had been absolved. We can only say that if the legatee is to be believed the testatrix cannot be.

" The debt was not barred by the statute.   The transfer of the Chester stock in 1882 was a clear and distinct acknowledgment of the debt, from which a promise to pay was reasonably deducible (Palmer v. Gillespie, 95 Pa. 340), and it took place within six years of the death of the testatrix.   The burden hence rested upon the accountants to show that they used due diligence to secure its payment, or that the debt itself was hopeless : Johnson's Est., 9 W. & S. 107 ; Charlton's App., 10 Cas. 473.   Its non-collectibility seems to have been taken for granted upon the statement as to his insolvency of the debtor himself, certainly the last person who should have been selected as an umpire.

" We think that the legacies in the clause of the will under review were specific.   The debt of the brother was not given as a fund out of which they were to be paid, but the debt itself —in the words of the testatrix, the ' money '—was the subject of the gift, and it was severed from the rest of the estate as effectually as any article of her personal effects could have been.   Where a legacy and fund are the same the legacy is specific : Welsh's App., 28 Pa. 363.   The exceptions on the points which have been discussed are sustained, and the accountants are ordered to sell the securities and to file an account of the proceeds of such sale ; notice of such sale to be given to all parties in interest."

PENROSE, J., dissents.

*Errors assigned* were : (1.) In sustaining the exceptions to the adjudication on the point as to the right of the executors to claim payment of the old debt of $7,000, and as to the extinguishment of said debt by the conveyance of 1879.   (2.) In not deciding that the said debt of Joseph W. Souder for $7,000 was extinguished by the conveyance of 1879.   (3.) In not deciding that the transfer of the stock to decedent of the Chester Land and Improvement Company in 1882 was not collateral for a debt, but was founded on the consideration that the assignee would reconvey upon receiving $7,000.   (4.) In deciding that the debt was not barred by the statute of limitations. (5.) In deciding that the burden rested on the accountants, to show that they used due diligence to secure the payment of the debt, or that the debt itself was hopeless.   (6.) In ordering

the accountants to sell the securities and file an account of the proceeds of such sale.    (7.) In not dismissing the exceptions to the adjudication and confirming the same.

*John G. Johnson* and *J. Percy Keating, B. Gordon Bromley* with them, for appellant.—The weight of the evidence supports the finding of the auditing judge.    There was the absence of any evidence of an existing indebtedness; the uncontradicted testimony of Souder himself on cross-examination by the objecting legatees; and the production of the deed of 1879, the consideration of which was exactly the amount of the debt formerly existing, supported by his testimony that it was executed in consideration of the debt.

Like the verdict of a jury, the finding of an auditor should be allowed to stand unless it is clearly against the weight of the evidence: Speakman's Est., 71 Pa. 25 ; McConnell's App., 97 Pa. 31.    The mention of the name of J. W. Souder in the inventory and account in connection with the debt did not constitute any acknowledgment by him of the justice or legality of the demand.    Bell's Est., 25 Pa. 92 ; Stewart's Est., 26 W. N. C. 553 ; Christy v. Flemington, 10 Pa. 129.    Souder's testimony and the language of the will are the only links connecting the transfer of the stock with the debt at all.    Without them the debt, even if the deed of 1879 had no reference to it, would have been barred by the statute of limitations at decedent's death.    Under Bell's Appeal, supra, Souder could claim the bar of the statute of limitations notwithstanding the mention in the inventory.

*Arthur M. Burton, J. M. Pile, C. W. McKeehan, Keator &* *Freemann, W. S. Roney, Geo. Q. Horwitz* and *Wm. W. Porter* with him, for appellees :—The debt of Joseph W. Souder to the estate was admitted in the inventory and appraisement filed by the executors and in their first account, the correctness of which was sworn to by him and also in the restated account which was also verified by him.    There was no evidence whatever given by Joseph W. Souder that showed these admissions were made under a mistake as to the facts, and they constitute a deliberate acknowledgment of the existence of the debt: Stewart's Est., 137 Pa. 175.    The debt was not barred by the statute of limitations : Palmer v. Gillespie, 95 Pa. 340.

OPINION BY MR. JUSTICE GREEN, July 11, 1895:

The testimony of Joseph W. Souder is confusing and contradictory but there is enough in it, and in the other facts in evidence, to require an affirmance of the decree of the learned court below.    The chief question in the cause is whether the admitted original indebtedness of J. W. Souder to the deceased, of $7,000, was extinguished.    The origin of the debt does not appear, but that is not necessary, as the fact of indebtedness was not only admitted, but positively testified to, by the debtor himself.    The only circumstance that raises any question on the subject, is the fact that Mr. Souder testified at one stage of his examination, that the debt was paid by the deed which he executed and delivered to the deceased, Jan. 24, 1879, for all his interest in his deceased brother's real estate, which included several parcels of property.    He was asked, " Q. Was it given in collateral or in payment of the debt?    A. In payment of the debt."

As a matter of course if this statement was correct, the debt was extinguished and fully paid on Jan. 24, 1879, and could have no legal existence thereafter.    But his other testimony is so entirely inconsistent with this that the two portions cannot be reconciled.·    When he was first called he was asked: " Q. What were the collaterals which you gave your sister for the $7,000?    A. I gave her the property which came to me from my brother's estate.    Q. What property was that?    A. He owned those houses down on 11th street.    He owned this property out in West Philadelphia, those houses out there."    He further said that the deed was absolute and that it was dated the 24th of January, 1879, leaving no doubt as to the identity of the instrument.    But he had just previously said it was given as collateral to the $7,000 debt.    The fact that the deed was absolute was not at all inconsistent with its being given, and received, as collateral for the debt, because the absolute form of the conveyance was the proper and customary mode of passing the title.    He did not say that he told his sister that he gave it in payment of the debt or that she received it as such.    A little earlier in his first examination he was asked: " Q. Do you know what the collaterals are without their production?    A. I gave her in the first place three houses on Oxford street for the consideration of $3,000, between 17th

and 18th streets, on the south side. In 1878 or 1880 she sold them to the mortgagee. I do not think she got anything out of them. I then gave her an assignment of all the real estate —of the real estate I had conveyed to me from my brother's estate."

In this connection he calls the deed an assignment and classes it among the collaterals. The question was asked in reference to the account filed by the executors, of whom the witness, J. W. Souder, was one. The account proper contained a distribution account annexed to it, in which occurred the following item: "Indebtedness of J. W. Souder secured by collateral retained by the executors for further accounting when a sale of the collateral becomes possible—$7,000."

The accountants asked that the remainder of the funds in their hands should be distributed, amounting to $3,000 of principal and $473.25 of interest, and that this "indebtedness of J. W. Souder" which was secured by collateral "should be reserved by the executors for further accounting when a sale of the collateral becomes possible." It was to ascertain what the collaterals were that the above question was asked and answered. Now the account was filed on Nov. 10, 1893, seven years after the death of the testatrix, and the above testimony of J. W. Souder was delivered on Jan. 5, 1894, whereas the deed which he says paid off the $7,000 debt was made to his sister in January, 1879. If the debt was paid by the deed it could not be a subject of collateral, either when the account was filed, or when Souder testified. If the debt was paid in 1879 there could not be any "future accounting" for it in November, 1893, when the account was filed, nor in January, 1894, when Souder testified as above.

But there was further testimony of J. W. Souder altogether inconsistent with the theory that the debt was paid by the deed. He had transferred to his sister in 1882 one hundred and forty shares of stock in the Chester Land and Improvement Company, the par value of which was $50.00 per share, amounting on its face to $7,000. He was asked about this transfer and said, "No, sir; I gave her that stock in this way. She never got any income from this property. I said to her, 'Kate, there is the stock which will be worth maybe $20,000 or more; I will give you the first $7,000 out of these shares; then you can give me

any properties I got.' Q. Then the understanding was when you sold a certain portion of that stock and got $7,000 out of it for her you were to have the deed back? A. When I paid the $7,000, yes, sir. . . . Q. What else did you give as security to your sister besides that deed and that certificate of stock? A. I do not think I gave anything at all, sir. I do not remember a thing. . . . By the Court: Mr. Souder, as I understand, no part of the $7,000 has ever been paid? A. No, sir. . . . Q. So the prior debt of $7,000 is still unpaid? A. Seven thousand dollars, sir."

With all the charity which it is possible to extend to the witness, and with a perfect willingness to attribute to him a mere misunderstanding of his rights, and a misconception of his true position, it is certainly not possible to regard his testimony, taken in its entirety, as the basis of a judicial sentence or decree that his debt of $7,000 was paid by the deed of 1879.

In the inventory of his sister's estate taken in December, 1886, a few months after her decease, this debt was noticed as an asset of the estate thus : " Indebtedness of J. W. Souder to decedent of $7,000, secured by sundry collateral of uncertain and unknown value. Face value $7,000."

As this inventory was filed by the executors, of whom he was one, it must be taken as their deliberate assertion that the entire debt was then due to the estate, three years and more after the deed of 1879 was given. Again, when the account was filed in November, 1893 he, as one of the executors, charged himself with an item called " Indebtedness of J. W. Souder. . . . $7,000," and it was one of the several items which constituted an aggregate of $10,944.57 of assets of the estate. This account was verified by the affidavit of its correctness made by J. W. Souder himself. The description of it in the annexed distribution account we have already given. We are very clearly of opinion that upon the testimony and acts of Mr. Souder it must be adjudged that his debt to the testatrix was not paid by giving her the deed, that no part of it has ever yet been paid, and that it is a present subsisting indebtedness. It was not barred by the statute of limitations because the transfer of stock which was made in 1882, was a distinct acknowledgment of the debt from which a promise to pay was reasonably deducible, Palmer v. Gillespie, 95 Pa. 340, and this took place within six years of the death of the testatrix.

In addition to the foregoing considerations it is perfectly plain that the testatrix considered the claim as an existing debt against her brother at the time her will was made in June, 1886. She there recites it as a debt which her brother owes her and bequeaths it when paid, to various charitable legatees. While such a declaration could not operate to create a debt, it is certainly strong evidence that a debt already existing, still continued. It could not be extinguished by the acceptance of the deed unless she so intended at the time, and of that there is no evidence. Souder's statement that the debt was paid by the deed is nothing more than his own opinion to that effect. He does not say that she agreed to take it as payment.

We do not understand that the court below personally surcharged the executors with the amount of this debt. The court simply ordered that the executors should make sale of the securities and file an account of the proceeds, and that notice of the sale should be given to all parties in interest. This we think was correct. No time was fixed within which the sale should be made. We think a sale should be made after a notice to redeem has been given, for which a reasonable time should be allowed to the debtor.

The decree of the court below is affirmed, and it is ordered that the accountants make sale of the securities received from Joseph W. Souder within one year from the time of filing this opinion, after first giving said Souder three months' notice of said sale, and the opportunity to pay the debt and redeem the securities until the time of sale.