## Dick et al., Appellants, v. Daylight Garage, Inc., et al.

Argued April 18, 1939.   Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Henry Panfil,* with him *S. Lloyd Moore,* for appellants.

*Harry M. McCaughey,* with him *Walter L. Gallagher,* for appellees.

OPINION BY MR. JUSTICE MAXEY, June 19, 1939:

The plaintiffs-appellants brought suit as liquidating trustees for the Kensington Security Bank and Trust Company (hereinafter referred to as the bank), to recover upon a collateral promissory note given by the defendants to the bank more than six years before July 26, 1938, when the action was instituted.   The defendants pleaded the Statute of Limitations; the appellants

pleaded inter alia that payments of interest and principal were made upon the note at varied times within the statutory period. The last payment of $2,200 was credited on the note on June 10, 1937, and a credit of $210.51 was endorsed upon the note under date of May 18, 1934, representing a setoff by the bank on the deposit balance in the account of the Daylight Garage Inc., one of the defendants. There were four other credits endorsed upon the note, dated July 29, 1931, July 30, 1931, Jan. 29, 1932, and August 17, 1932, in sums of $375, $385, $250 and $250, respectively. The case was tried by a judge without a jury, and he found for the defendants, stating, inter alia: "The evidence given at the trial did not sustain plaintiffs' burden of proving 'a clear and unequivocal acknowledgment, coupled with an expressed or implied promise to pay' in order to remove the bar of the statute. . . ." The appellants filed motions for judgment n. o. v. and for a new trial. Both were denied by the court below and this appeal followed.

The first question is: Were these payments made by the defendants or on their behalf, with their knowledge and consent? If they were, they toll the running of the Statute of Limitations, and the bank is entitled to recover.

The note, which was signed by the "Daylight Garage, Wm. C. Bechtold, Pres.," was payable to the bank on demand in the sum of $31,200. Bechtold personally endorsed the note, waiving notice of demand, nonpayment thereof, etc., which were printed above his endorsement. It was given to the bank for a prior indebtedness incurred by Bechtold, individually, with the predecessor in title of the bank. The garage company was only an accommodation maker of the note. The several payments of interest and principal that were endorsed upon the note at later dates, were definitely not made by the garage company, or with its money, nor on its behalf with its knowledge and consent. These credits were

accounted for by payments made by the Rudleys, who were mortgagors on a mortgage given as collateral security to the note in issue, and by Hackel, a mortgagor on a subsequent mortgage which was substituted as collateral for the Rudleys' mortgage. These payments by the mortgagors accounted for the first four credits endorsed on the note. The other two credits were received by the bank from the public sale by the trustees of the last-mentioned mortgage for $4,400, of which the bank only received one-half the proceeds, and the "offset applied—5/18/34—$210.51" of the garage company's deposit balance with the bank when it closed. There was no evidence whatsoever to connect the garage company with these payments, and it did nothing acknowledging its continued liability. "A payment to toll the Statute of Limitations, must be made or authorized by the debtor: *Wesner v. Stein & Greenwalt*, 97 Pa. 322; *Furst v. B. & L. Assn.*, 128 Pa. 183, 18 A. 341; *Watts et al. v. Devor*, 1 Grant 267": *White v. Pittsburgh Vein Coal Co.*, 266 Pa. 145, 149, 109 A. 873. See also *Homewood Peoples Bank v. McCutcheon*, 266 Pa. 116, 117, 109 A. 873. The court below was clearly justified then in directing a verdict in favor of the garage company.

But the same cannot be said of the verdict which was rendered in favor of Bechtold. The note was his obligation. As collateral security for the payment of the note, he orally assigned to the bank his one-half interest in a $77,500 instalment second mortgage given by the Rudleys, the owners, to him. When the Rudleys defaulted, the mortgage was foreclosed. The trial judge found as a fact that "the foreclosure proceedings were brought in the name of Bechtold. However, he exercised no control over the action and took no active part therein. It was in actuality the bank's action, controlled by it for its own benefit, Bechtold allowing the bank to use his name in the proceedings. Title was taken after the sheriff's sale in the name of a straw man for the bank." The straw man, the evidence showed, was Hack-

el, a clerk in the bank. The court then found that "the straw man immediately executed a new second mortgage to the bank in the amount of $58,000 [this being the exact balance *then* due on the Rudley second mortgage]. The liquidating trustees sold this new second mortgage for $4,400 at public auction some time later." The bank realized $2,200 as its one-half interest in this mortgage. The other half was in a disinterested third party.

While the Rudleys' mortgage was in force, payments were made by them directly to the bank. The trial judge found that "the direction to make these payments directly to the bank was given to the mortgagor by the bank *with Bechtold's consent* in July, 1931, more than six years before suit was brought." (Italics supplied.) The appellants contend that these payments by the mortgagor to the bank "with the consent of and by arrangement of the maker and endorser of the note, which payments are endorsed by the bank on the date thereof . . . toll the running of the Statute of Limitations. . . ." This would be true if the mortgage was not actually assigned by Bechtold to the bank. Then, by Bechtold's "consent that Rudley pay the money directly to the bank," he would be "making Rudley his agent to carry that money to the bank." But here the mortgage was orally assigned to the bank by Bechtold, and notice was given to the Rudleys of this fact, and Bechtold gave his consent that Rudley pay the money due on the mortgage, to the bank. As the court below says, this was not "necessary in order to enable the bank to get" these payments. After the mortgage was assigned to the bank and the mortgagor had actual notice of that assignment, the latter was obliged to make his payments to the assignee bank. See *Kisinger v. Penna. Trust Co.,* 119 Pa. Superior Ct. 16. The court below correctly held that "the pledgee bank had the right to collect Bechtold's share of the interest on the mortgage without any further action by him. See Restatement of Security, Tent.

Draft, No. 1, sec. 3; *Brightson v. Claflin,* 225 N. Y. 469, 122 N. E. 458." It cannot therefore be contended that in making such payments, the mortgagor was acting as agent of the assignor, or that if the mortgage is pledged as collateral for a promissory note, the mortgagor in making such payments was acting as agent of the maker or endorser of the note. The liability of the mortgagor remains the same. His obligation is not on the note. His payments are not payments on the debts of the obligor on the note. He is merely paying a debt of his own. His is an independent obligation separate and distinct from that of the defendants.

However, there are other facts to be considered. These are that when the mortgage for $77,500 was foreclosed on February 6, 1933, the property was purchased in the name of Bechtold and Weitzenhofer (as evidenced by the sheriff's deed dated April 10, 1933) a deed was then given by them to Hackel, who in turn delivered his mortgage for $58,000 to them, and the one-half interest in the Hackel mortgage was delivered by Bechtold to the bank on June 3, 1933. Bechtold himself testified on cross-examination that he gave to the bank a one-half interest in this $58,000 mortgage of Hackel "in substitution as collateral security for the note in question for the original $77,500 mortgage of Rudley." This was a clear acknowledgment of the debt from which a promise to pay may reasonably be deduced. Since the transaction was within six years of the institution of this action, the latter is not barred by the Statute of Limitations. Surely the delivering of collateral security to insure the payment of a debt is such an acknowledgment of that debt as will support an inference of a promise to pay it.

In the *Estate of C. R. Souder, Deceased,* 169 Pa. 239, 32 A. 417, this court held that the transfer of stock as collateral security, made within six years of the death of the testatrix, was a distinct acknowledgment of a debt from which a promise to pay was reasonably de-

ducible. In *Johns v. Lantz*, 63 Pa. 324, Justice SHARS-WOOD, speaking for this court, said: "No case has ever gone the length of saying that there must be an express promise to pay in terms" in order to take a case out of the Statute of Limitations. In *Palmer v. Gillespie*, 95 Pa. 340, this court said: To take a case out of the operation of the Statute of Limitations, "it is not necessary that the promise [to pay] be actual or express, provided the other necessary facts are shown. A clear, distinct and unequivocal acknowledgment of a debt is sufficient to take a case out of the operation of the statute. It must be an admission consistent with a promise to pay. If so, the law will imply the promise, without its having been actually or expressly made."

It is true that in his affidavit of defense Bechtold avers that the one-half interest in the $58,000 Hackel mortgage and bond was delivered to the bank "in full payment and satisfaction of all the indebtedness of principal and interest evidenced by said note on which plaintiffs have brought this suit against the defendants, and in full payment and discharge of said note." There was, however, no proof of this averment. As the trial judge said near the conclusion of the case, in discussing whether or not either of the mortgages was accepted "as payment," "we don't have any definite evidence on the later one." That a half interest in the first mortgage was assigned not as payment but as collateral security is clear from the record. The inference is inescapable that when Bechtold exchanged with the bank new collateral for old collateral, he did so because he was interested in the debt the old collateral secured. If the first collateral "paid his debt" to the bank, he would have no reason to secure that debt. As a matter of fact he foreclosed the original mortgage, which was in default, and at the resulting sale he obtained title for himself and another to the mortgaged property and he then arranged for the creation of the new $58,000 mortgage and he assigned to the bank his half interest in

this in exchange for the original mortgage which had served as collateral security for his debt to the bank. This transaction took place on June 3, 1933. The instant suit was begun on July 26, 1938. Bechtold, having acknowledged his indebtedness to the bank by depositing at the time stated a new security for its payment, cannot successfully interpose as a defense to the claim formally made for the debt's payment, five years and fifty-three days thereafter, the bar of the six-year Statute of Limitations of March 27, 1713, 1 Sm. L. 76, sec. 1 (12 PS sec. 31).

Therefore, the judgment in favor of the Daylight Garage, Inc., is, affirmed, and the judgment in favor of William C. Bechtold is reversed, and judgment is herein entered for the plaintiffs against William C. Bechtold, non obstante veredicto.