### Ralston Estate

*James Arensberg*, for executor.

*Park J. Alexander* and *John J. McLean, Jr.*, for claimants.

RAHAUSER, J., January 26, 1956.—Jessie H. Ralston died September 14, 1954, a resident of Allegheny

County. She was survived by her brother, Dr. Charles Scott Murray. Her brother, Eugene Murray, predeceased her on June 7, 1948. The Fidelity Trust Company was appointed executor of his estate. Eugene Murray was survived by his widow, Agnes Graff Murray, and one daughter, Agnes Murray Baca, and a grandson, R. J. Murray, III. R. J. Murray, III, was the son of R. J. Murray, II, who died in February, 1948. A third son, Eugene Murray, Jr., was killed during the second World War and was not survived by issue.

Letters testamentary on the estate of Jessie H. Ralston were granted on the 16th day of November, 1954, to the Fidelity Trust Company.

The will of Jessie H. Ralston, dated May 27, 1947, provides, inter alia, as follows:

"All of my property and estate, personal and real, remaining after the payment of the expenses of my last illness and burial, my debts, the expenses of administration, and death duties, I give, bequeath, and devise to my brothers, EUGENE MURRAY, and DR. CHARLES SCOTT MURRAY, in equal shares.

I acknowledge a debt in the amount of Six Hundred forty-six dollars and six cents ($646.06) to my brother, EUGENE MURRAY, for the payment of the expenses of the funeral of my deceased husband, DR. S. H. RALSTON."

The grandson, R. J. Murray, III, was in the military service as of October 19, 1955, the date of the audit, and, due to the fact that the Fidelity Trust Company was executor of the estate of Eugene Murray and of the estate of Jessie H. Ralston, the court appointed an attorney to represent the said R. J. Murray, III, under the Soldiers' and Sailors' Civil Relief Act.

A memorandum° is filed by R. J. Murray, III, through his attorney and, likewise, a memorandum is

filed by counsel for the Fidelity Trust Company, executor of the estate of Eugene Murray, deceased, both contending that the debt in the amount of $646.06, acknowledged in the will of decedent, is a valid claim against the estate of the above decedent. They contend that the plain and explicit acknowledgment in the will of Jessie H. Ralston tolls the statute of limitations and that said amount should be paid to the executor of the estate of Eugene Murray, deceased.

A memorandum is filed by counsel for the estate of Jessie H. Ralston wherein a contention is made that the aforesaid acknowledgment of debt to Eugene Murray in the will of decedent is barred by the statute of limitations.

It is admitted that the funeral bill of Jessie Ralston's husband was paid by the said Eugene Murray and that the payment was made more than six years before the death of decedent. However, the parties claiming through Eugene Murray contend that the question before the court is the interpretation of the will of Jessie H. Ralston and that the statute of limitations is not an effective bar to the claim.

The court is of the opinion that the claim of the executor of the estate of Eugene Murray should be allowed in the amount of $646.06.

The will of decedent speaks as of the death of decedent. The facts, therefore, are that Jessie H. Ralston desired to make clear acknowledgment of the debt, not as of the time the will was written, but as of the date of her death, September 14, 1954. The record is clear that decedent intended the law to give effect to her act, namely, to give effect to her acknowledgment of the said debt as of September 14, 1954.

The Supreme Court, in Huffman Est., (No. 3), 349 Pa. 59, 63, said:

". . . 'To toll the statute of limitations there must be a clear and unequivocal acknowledgment of the debt

and a specification of the amount or a reference to something by which the amount can be definitely ascertained, coupled with an express or implied promise to pay': . . ."

There could be no clearer acknowledgment of the debt than the words of the will in this estate: "I acknowledge a debt in the amount of Six Hundred forty-six dollars and six cents ($646.06) to my brother, EUGENE MURRAY. . . ." The implied promise to pay is likewise present in the instant case. The Supreme Court, in Dick et al. v. Daylight Garage, Inc., et al., 335 Pa. 224, 230, said:

". . . In *Palmer v. Gillespie*, 95 Pa. 340, this court said: To take a case out of the operation of the Statute of Limitations, 'it is not necessary that the promise (to pay) be actual or express, provided the other necessary facts are shown. A clear, distinct and unequivocal acknowledgment of a debt is sufficient to take a case out of the operation of the statute. It must be an admission consistent with a promise to pay. If so, the law will imply the promise, without its having been actually or expressly made.' "

The court is of the opinion that Judge Ashman stated the law that governs this case. In Pillion's Estate, 3 Dist. R. 383, 384, where the facts were very close to the facts in question, the court said:

"After directing the payment of her just debts the testatrix added: 'At the date of this will I owe $50 to Mrs. Deveny, $26 to John Love, and $10 to Mrs. Sullivan.' She died July 31, 1892, five years after executing her will. At the audit, more than six years having elapsed from the date of the will, it was objected that the debts so admitted by the testatrix were barred by the statute. The argument was that the testatrix having fixed that time as the date of her indebtedness, evidently intended that her will should speak as of that

time, and not of the time of her death. Of course the instances are many in which, notwithstanding the Act of June 4, 1879, a will speaks from the date of its execution, as where it creates a separate use trust. The beneficial legatee in that case must be either married or in direct contemplation of marriage at the very time the will is executed. If, however, nothing appeared in this will beyond what we have quoted, we would still doubt the validity of the objection. Where a testator directs the executor to pay his just debts, and immediately proceeds to enumerate them, it would seem that he intends that they shall be paid at his death, whenever that may happen, because, until that event, it will be impossible for the executor to obey him. So if a testator gives a legacy which he expressly says is in payment of a debt, the legatee will take, no matter how old the debt may be when the testator dies; and this testatrix has practically given such legacies to the claimants. But it is unnecessary to discuss the question, for the reason that the testatrix has settled it herself. By the remaining clauses of the will she gave some small pecuniary legacies, and provided for the purchase of a burial lot, and she then disposed of her residuary estate 'after paying debts, legacies, expenses and charges as above set forth.' Here was a declaration as explicit as could well be made, that the debts which she had specifically designated, and which were the debts now in dispute, were to be paid by the executor, after the death of the testatrix. Granting that the former clause was a mere acknowledgment of a debt, which began to run at the moment it was written, the latter clause was as certainly a promise to pay, which could only run from the time when the instrument which contained it, would go into effect."

Accordingly, the claim of the executor of the estate of Eugene Murray, deceased, is allowed. . . .