## W. J. MILLER, FOR USE, v. T. D. MILLER.

APPEAL BY S. THOMPSON ET AL., USE PLAINTIFFS, FROM THE COURT OF COMMON PLEAS OF FAYETTE COUNTY.

Argued May 14, 1890—Decided October 6, 1890.

(*a*) The plaintiff in a judgment assigned a portion of it, entered satisfaction as to the balance, and afterward became the owner of the land bound by the lien thereof. The lien of the judgment having subsequently expired, he signed a paper upon which judgment of revival was entered against him by the prothonotary.

(*b*) The paper was a blank form filled up, but it was not signed by the judgment defendant, and, against the latter, judgment was subsequently taken upon two nihils. Execution having issued. a rule was granted to show cause why the judgment against the plaintiff should not be stricken off:

1. The judgment was a nullity in law because not authorized by the agreement.

2. The signature of the judgment plaintiff to the paper filed was consistent with an intention on his part to charge his land by the revival, and, unexplained, a court exercising equitable jurisdiction might be justified in treating the execution of the paper as having been with that intent.

3. But, an averment of the petition, that "there was no intention on the part of the petitioner to confess a judgment against himself," being undenied by the answer, the paper as filed was insufficient to authorize the judgment to be entered against the petitioner, and it was properly stricken off.

Before STERRETT, GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 40 July Term 1890, Sup. Ct.; court below, No. 194 December Term 1888, C. P.

On November 2, 1888, to the number and term of the court below, above given, a scire facias was issued to revive a judgment entered on August 4, 1883, to No. 164 September Term 1883, in favor of William J. Miller against Thomas D. Miller, for $4,331.69.

Statement of Facts.

The record of the original judgment showed that on August 14, 1883, the plaintiff had assigned $2,500 of it to Samuel Thompson and Bridget Thompson, and that on September 12, 1885, he had entered satisfaction as to that part not so assigned.

On November 3, 1888, by writing of William J. Miller, dated October 17, 1888, the prothonotary entered judgment "thereon in favor of plaintiff and against defendant" for the sum of $2,873.91, the balance of debt and interest due on the original judgment. On November 15th, the writ issued was returned served upon W. J. Franks, terre-tenant, and nihil habet as to Thomas D. Miller; and, on December 10th, an alias writ was issued, which was subsequently returned nihil habet as to Thomas D. Miller, and on January 17, 1889, judgment was entered in favor of the plaintiff and against the defendant Thomas D. Miller on two nihils, for $2,873.91, and writ of fieri facias issued.

On February 5, 1890, William J. Miller presented his petition averring:

"That on August 4, 1883, a judgment was entered in the Court of Common Pleas of Fayette county at No. 164 September Term 1883, against one Thomas D. Miller and in favor of your petitioner for $4,331.69; that, at the time said judgment was confessed and entered, the said Thomas D. Miller was the owner of a tract of land situate in Luzerne township, said county, . . . . . on which land the above judgment became a lien; that on August 14, 1883, the plaintiff in said judgment, by his writing filed, for value received assigned and transferred $2,500 of the same to Samuel Thompson and Bridget Thompson; that on September 8, 1885, Thomas D. Miller executed and delivered a deed for the premises described to William J. Miller, your petitioner, which deed is duly recorded in the recorder's office of Fayette county; that on September 12, 1885, satisfaction was entered for that part of said judgment not assigned; that on November 3, 1888, after the expiration of the lien aforesaid upon said land, what purports to be an amicable scire facias between the plaintiff and defendant in said judgment to revive the same was issued, signed by William J. Miller, your petitioner, a copy of which is as follows:

Arguments.

" ' In the Court of Common Pleas of the county of Fayette, of December Term 1888. No.

" ' Amicable scire facias sur judgment No. 164 September Term 1883.

" ' William J. Miller, for use, etc., v. Thomas D. Miller, with notice, etc.

" ' It is hereby agreed that a scire facias upon the above ·judgment may be entered with the same effect as if a scire facias to revive the same had been regularly issued, served personally on the defendant by the sheriff of said county and duly so returned, and that a judgment be entered thereon in favor of the plaintiff and against the defendant for the sum of twenty-eight hundred and seventy-three and $\frac{91}{100}$ dollars, being amount of debt and interest now due on the original judgment.

" ' Dated, Oct. 17, 1888.　　　　WILLIAM J. MILLER.

" ' $2,873.91.'

" That on the paper aforesaid a judgment of $2,873.91 was entered against your petitioner by the prothonotary of Fayette county at No. 194 December Term 1888; that at the time of signing said paper there was no intention on the part of your petitioner to confess a judgment against himself, and that the paper so signed does not justify or warrant the entry of a judgment against him.

" Your petitioner therefore prays your Honor that said judgment entered against him by the prothonotary as aforesaid may be stricken from the record," etc.

A rule granted having been served, Samuel Thompson, for the use plaintiffs in said judgment, made answer showing:

" That nothing set forth in the said petition is cause for striking the said judgment off the record, as prayed for in the said petition, because at the time of signing the said amicable scire facias set forth in said petition, on which said judgment was entered, the said William J. Miller was the owner of certain lands which· he bought from the said Thomas D. Miller while the said land was still subject to the lien of the said judgment, and was therefore a terre-tenant of lands originally bound by said judgment, and was justly and morally bound to pay the same."

The proceeding having been set down for hearing on petition and answer, after argument thereof, the court, EWING, J., on

Opinion of the Court.

April 4, 1890, ordered that the rule be made absolute, and that said judgment against William J. Miller be stricken from the record. Thereupon, the use plaintiffs took this appeal assigning the said order for error.

*Mr. Edward Campbell*, for the appellants.

Counsel cited: Penna. R. Co. v. Shay, 82 Pa. 198; Richards' App., 127 Pa. 63; North v. Williams, 120 Pa. 109; Day v. Osborn, 19 W. N. 443; White v. Smith, 33 Pa. 186.

*Mr. S. L. Mestrezat* (with him *Mr. A. C. Hagan*), for the appellee.

OPINION, MR. JUSTICE MITCHELL:

The judgment of revival is entered upon what purports to be an agreement for an amicable scire facias. But the alleged agreement is a nullity, because the only judgment it authorizes is one against the defendant, and the defendant has not signed the agreement. The judgment that was actually entered on the agreement, against the plaintiff, was equally bad, because the agreement, even if it had been otherwise valid, did not authorize any such judgment. On the face of the record, therefore, as it stood at the time, the judgment of revival was in law not merely irregular, but absolutely void. There was nothing to support it.

If we look to the subsequent proceedings, we find the petition setting forth certain facts that might explain the judgment against the legal plaintiff. After the entry of the original judgment, he had assigned something more than half of it to the Thompsons, the use plaintiffs, had entered satisfaction of record as to the rest, and had become the owner of the land. In effect, therefore, he had no longer any interest as plaintiff, but had become terre-tenant subject to the lien of the reduced judgment against the defendant. There would be no difficulty in equity in holding him as such, and giving that effect to his signature to the agreement of revival, if the facts of the case warrant a court of equity in so doing. But the facts appear only by the petition, and that denies the intention of the parties to produce any such result. The opinion of the learned judge below calls attention to the failure of the answer to deny the

allegations of the petition, and says very pointedly that, "if the petitioner did sign this paper for the purpose for which they (the use plaintiffs) have used it, they could very easily say so." The lien of the judgment had expired, and the plaintiff's land was discharged, but the debt was one of which the plaintiff apparently had originally had the benefit; his land had been liable for it, and he may be said to be still under a moral obligation to pay it. Under these circumstances, he put his signature to a paper which, though a nullity in law, was treated by the other parties, and through them by the prothonotary, as authority to restore the lien against his land, and the case resolves itself into the question whether equity will sustain the effect thus given to the paper, in the face of an uncontradicted denial that the parties intended it.

Such a question must certainly be answered in the negative. This is practically an effort by the use plaintiffs to overcome the loss of their statutory lien, the expiration of which is almost exactly analogous to the bar of the statute of limitations. Whether there ever was a debt from the plaintiff to the use plaintiffs would depend on the terms of the assignment of part of the judgment by him to them, and the consideration for it; but of what these were there is no evidence. There is nothing therefore to show that there was ever any personal liability on the part of the plaintiff, and the statutory liability of his land has expired. Under such circumstances, the moral obligation to pay a barred indebtedness has never been held sufficient to be enforced, either at law or in equity, without clear evidence of the intention of the debtor to renew his liability. The rule is settled, and very firmly held in this state, that, to overcome the bar of the statute of limitations, there must be either an express promise to pay, or an acknowledgment of a debt not only clearly consistent with a promise to pay, but so distinct and unequivocal as to leave no doubt or hesitation as to the debtor's meaning and intention. "If there be accompanying circumstances which repel the presumption of a promise or intention to pay," the evidence will not be sufficient to allow the jury to find a new liability: Greenl. Ev., § 440; Wesner v. Stein, 97 Pa. 322; Lawson v. McCartney, 104 Pa. 356; Palmer v. Gillespie, 95 Pa. 340. In the present case, the only act by which the judgment against plaintiff is sought to be sus-

tained is his signing an agreement which does not authorize such a judgment. As already seen, his signature would have been consistent with an intention to charge his land, and thereby to pay, and, unexplained, a court of equity might be justified in treating this as the prima facie intent. But it is not a necessary and inevitable inference.

The active parties in the revival were the Thompsons, and, though their right to use the plaintiff's name for this purpose could hardly have been questioned, yet it might have been thought proper to get his own signature, especially in view of the fact that the judgment was to be revived for less than its original amount. Inferences from acts, in such cases, are drawn only when they are unequivocal. Thus in Shaeffer v. Hoffman, 113 Pa. 1, it was held that an acknowledgment of the signature to a note, and saying it "would have to be fixed," was not sufficient to revive the debt. "The acknowledgment of his signature to the note," says the present Chief Justice, "would not, of itself, be an acknowledgment of the debt. The latter might have been paid, or there might be a valid defence to it." In the present case, not only is the act susceptible of more than one explanation, and therefore equivocal, but there is an express denial of the intention that it should have the legal effect now sought to be given to it. Both parties seem to have been somewhat shy of going into the account of what was actually done in the matter, neither the petition nor the answer giving any details, though the original agreement sent up with the record is a printed form with the blanks apparently filled in as to amount, etc., by the parties themselves or some of them. But the denial in the petition is express, and the answer makes no averment to the contrary. Whether, therefore, the use of the agreement as a foundation for the judgment against plaintiff was a trick, an accident, or the result of ignorance, it is plain that it was not only void at law, but was contrary to the intention of the parties, and therefore without any sufficient equity to sustain it.

Order affirmed.