# Henry *v.* Zurflieh, Appellant.

### *Deed—Consideration—Parol evidence.*

Although parol evidence will not be admitted to contradict or vary the written covenants in a deed, in the absence of fraud, accident or mistake; parol evidence is admissible to vary or contradict the written expression of the consideration. The reason for relaxing the general rule in this particular is that a change in or contradiction of the expressed consideration does not touch the covenants of the grantor and grantee in the deed, and does not limit nor enlarge the grant. The fact that the consideration mentioned in the deed is a considerable sum of money, does not prevent the admission of evidence to show that the real consideration was a larger sum.

In an action to recover a balance alleged to be due on the purchase price of real estate where the price mentioned in the deed was $2,500, and the real consideration alleged by the plaintiffs was $4,500, plaintiff's claim should be submitted to the jury where two witnesses testify that they were present at the bargain and heard the parties agree upon the larger sum, and two other witnesses testify to acknowledgments made by the purchaser that he owed the larger sum, and letters are offered in evidence showing that the purchaser sent considerable sums of money to the vendor with promises of further payments.

### *Appeals—Questions not raised in the lower court—Illegal consideration.*

In an action of assumpsit by a woman against the administrator of a man, the illegality of the consideration by reason of an alleged meretricious relation between the man and the woman cannot be considered by the appellate court, where such a question was not raised or considered in the court below.

### *Statute of limitations—New promise—Evidence.*

A clear, distinct and unequivocal acknowledgment of a debt is sufficient to take a case out of the statute. It must be an admission consistent with a promise to pay. There must not be any uncertainty as to the particular debt to which the admission applies. It must be so distinct as to remove hesitation as to the debtor's meaning.

The law makes no change in the measure of proof between the promise made before the statute has run and one made afterwards. All that can be said is that as an argument on evidence, the improbability of a promise made while the debt is still within the statutory period is less than of one made after the claim is completely barred.

In an action of assumpsit where it appears that the debt has been barred by the statute of limitations, the jury is warranted in finding a new promise, where several witnesses testify that the debtor acknowledged the debt in suit and promised to pay it, and other witness testified that he had promised to pay it on a particular date, and numerous letters of the debtor to

the creditor, while not containing a reference to a particular debt, all accorded in character with the specific promises testified to by the witnesses.

Argued Feb. 25, 1902.   Appeal, No. 28, Jan. T., 1902, by defendant, from judgment of C. P. Lackawanna Co., May T., 1899, No. 903, on verdict for plaintiff, in case of Mary Henry v. Anna Elizabeth Zurflieh, Administratrix of John Shaffer, Deceased. Before McCollum, C. J., Mitchell, Dean, Brown and Mestrezat, JJ.   Affirmed.

Assumpsit to recover balance of purchase price of real estate. Before Kelly, J.

At the trial it appeared that in 1886, Joseph Henry and his wife conveyed real estate to John Shaffer for the consideration expressed in the deed of $2,500.   Plaintiff claimed that the real consideration was $4,500.

When John Hoffman, a witness for plaintiff, was on the stand, the following offer was made :

The plaintiff proposes to prove by the witness on the stand that he has lived in the borough of Dunmore for a long number of years ; that he was well acquainted with John Shaffer in his lifetime, and was also acquainted with the plaintiff, Mary Henry ; that some time previous to December 20, 1886, he was at John Shaffer's place of business in Dunmore, and had a conversation with him, in which Shaffer stated to the witness that he intended to purchase the Henry property, and Shaffer also stated to the witness that he thought the property was worth about $4,500, and that he would be getting a good bargain if he got it for that sum ; that Shaffer also told the witness that Mrs. Henry was anxious to get the property out of her husband's hands on account of his dissolute habits ; that on December 20, 1886, Mrs. Henry, the plaintiff, was indebted to the witness in a sum of money for some articles of jewelry that she purchased from him, and that he called upon Mrs. Henry around December 21, 1886, for the purpose of getting his money from her, and that he was referred to Mr. Shaffer by Mrs. Henry for his money.   That the witness went to Mr. Shaffer, and Mr. Shaffer told him that he was going to take the Henry property, and that he would pay him the debt that Mrs. Henry owed him.   That in this conversation Shaffer told the

witness to go to the Henrys and bring Mr. and Mrs. Henry to
his store; that he was prepared and was about to take the
property from them. And the witness, in pursuance to that,
did take Mr. and Mrs. Henry to John Shaffer's store, in Dun-
more, and that when the witness arrived at the store of Shaffer,
there was present Martin R. Kays, the notary public, before
whom the deed was acknowledged, John Shaffer and one Fer-
guson Riple. That he heard John Shaffer and Joseph Henry
and Mrs. Henry discuss the question of purchasing the prop-
erty; and that he saw the deed there that was afterwards de-
livered to Mr. Kays, who was also acting as counsel for John
Shaffer. That the witness heard the conversation between the
parties in Shaffer's store, that is, the conversation between John
Shaffer, Joseph Henry and Mary Henry, the plaintiff. And
that the consideration of the deed there was that Shaffer was
to cancel a debt of some twelve or thirteen hundred dollars
which he had against Joseph Henry, and was to pay Mrs.
Henry the sum of $3,000. That after this conversation
between the parties, the witness heard Shaffer say to
Martin R. Kays, the attorney and notary, to take the deed to
Scranton, and have it recorded at once. And that Mr. Kays
left with the deed. That after he left, the witness heard John
Shaffer say that he was going to pay Mrs. Henry $3,000 ; and
that he had canceled the debts of the Henrys which he held
against them. We propose to show further by the witness that
in the talk and meeting of the parties in the store, on the day
that the deed was delivered to Mr. Shaffer's attorney, that
there was no consideration passed from John Shaffer to Joseph
Henry and the plaintiff. That some time in the month of
April, 1898, the witness saw Mr. Shaffer and the plaintiff at
Mr. Shaffer's house in Dunmore ; and that the witness was
called into Shaffer's house by John Shaffer, and he there heard
Mr. Shaffer say that he was indebted to Mrs. Henry in the sum
of $3,000, with interest, for the purchase of the Brook street
property in Dunmore, which he purchased in 1886, and that he
was going to pay her in a short while.

Mr. Wells : We object to the evidence as to any conversation
between the witness and John Shaffer prior to the date of the
deed, as being immaterial. The contract or arrangement being
consummated on the day the deed was given, by the writing

therein contained.   We further object to the evidence proposed
to be offered as to the contract alleged to have been made on
the date of the deed, or the time it was executed and delivered,
as being incompetent and not tending to show the claim as
alleged in the statement filed.   We object to the evidence as
to the conversation in 1898, as being immaterial and irrelevant,
as there was no consideration to support any promise of that
kind, the statute having barred it if it had been made in 1886.
We object to the entire evidence as not being in conformity
with the allegations laid in the statement filed, wherein they
declare that the consideration was $4,800.   For the further
reason that the whole evidence discloses a claim that would be
barred by the statute of limitations if there were any such
claim.

The Court: I think the offer is admissible with the excep-
tion of the part referring to the witness going to Mrs. Henry,
the plaintiff, about his bill, and being referred to Mr. Shaffer;
that, of course, is hearsay, and is not admissible to affect the
defendant, being a conversation which took place in his absence.
I will therefore sustain the objection to the extent of exclud-
ing that part of the offer.   The declaration sets forth that the
conveyance was made in consideration of the sum of $4,800
and that the sum of $1,800 was paid to the grantors by the
grantee, and that the grantee agreed to pay to Mary Henry,
the plaintiff, the balance of $3,000.

While this is an offer to show a consideration of $4,500, and
that the difference between the $4,500 and the $3,000 was
made up by the cancelation of some indebtedness of Joseph
Henry to John Shaffer and by the payment of certain other of
the debts of Joseph Henry, yet it seems to me that the material
part of the declaration is as to the balance due upon the pur-
chase money, which was agreed to be paid to Mary Henry.   I
am therefore of the opinion that this is not such a variance as
would make the evidence inadmissible.   I will overrule the
objection.

Exception noted for defendant at whose request a bill is
sealed. [1]

The court charged in part as follows:
[Now, on the part of the defendant we have, in the first

place, the record of certain judgments against Mr. Henry in favor of John Shaffer. One in the sum of $700 with interest from December 24, 1895; one in the sum of $1,000, with interest from October 21, 1886; one in the sum of $431.89 with interest from December 23, 1886. These three judgments were offered in evidence, and they would amount to something over $2,000 perhaps considerably over $2,000 with interest and costs, on December 20 and 21, 1886. There was also another judgment offered in evidence in the sum of $765, with interest from July 1, 1884. Now all of these judgments, according to the record, except the last one we may say, were satisfied on January 10, 1887, some two or three weeks after this transaction took place. The third and fourth judgments offered, the satisfaction on the continuance docket in the prothonotary's office, shows that the satisfaction was on January 10, 1886, but upon that point you have the testimony of Mr. Lewis, the district attorney, who was at that time prothonotary's clerk, that that was an error, and that the satisfaction as a matter of fact was made on January 10, 1887. Now, if you believe his testimony, and that the satisfactions were made all on the same day, all of these four judgments, on January 10, 1887, we have at least prima facie indebtedness on the part of Mr. Henry to Mr. Shaffer of over $3,000, and we have that record indebtedness all canceled some two or three weeks after the transaction took place. We have that circumstance for you to take into consideration in passing upon this question.] [2]

[Now then, gentlemen of the jury, as I said on the first proposition which the plaintiff must prove in order to make out her case, are you satisfied from this evidence on the part of the plaintiff and the defendant, taking it all into consideration and weighing it carefully, taking into consideration the statements of Mrs. Henry as made in her letters, are you satisfied that this contract was made in 1886 as she alleges? Did Mr. Shaffer agree to pay her $3,000 as a balance of the purchase money, or as a consideration for the conveyance of this property, and was it never paid by him, and was it still due at the time of his death? It is argued, as I have already said to you, that the testimony on the part of the plaintiff's witnesses and the letters written by John Shaffer, establish that their con-

tention is correct. When we get the letters of Mrs. Henry to John Shaffer we have, to a certain extent, the other side of the correspondence, so that we have the letters from Mr. Shaffer to Mrs. Henry and the letters from Mrs. Henry to Mr. Shaffer, and it is argued on behalf of the defendant that her letters would tend to disapprove and rebut the proposition that she makes, would tend to show that there were no relations of debtor and creditor between her and Mr. Shaffer, that they rather tend to show a relation of friendship, if not of affection between them. They claim that the language used by her in her letters is not the language of one who had a claim against another of a business nature or character, had due to her a debt from Mr. Shaffer. Of course, gentlemen of the jury, that is all for you, and not for me; it is for you to pass upon these disputed questions, and as I was saying to you from all of this testimony, after examining the correspondence between the parties, after sifting and weighing the testimony of the witnesses upon the part of the plaintiff as well as the witnesses such as have been sworn on the part of the defendant, after taking into consideration the value of the property as you find its value to be, you will notice that it is alleged to have been $4,500 or $4,800 on the part of the plaintiff, and some of the witnesses for the defense, or at least one, Mr. Manley, puts it as low as $2,000; the value of the property, as I say, is a circumstance, whatever you find it to be, in connection with the other circumstances of the case; the judgments that Mr. Shaffer had against Mr. Henry, the fact that they were all apparently satisfied some three weeks after this transaction took place, taking all of these things together into consideration, are you satisfied that there was an agreement in December, 1886, to pay Mrs. Henry $3,000 for the balance of the purchase money of this property on the part of John Shaffer, and was it never carried out, and was the sum with interest due to her at the time that Mr. Shaffer died? If you are satisfied that there was such a contract, then that will bring you to the second proposition which I will have to call your attention to. If, on the other hand, you are not satisfied that the bargain was as Mrs. Henry alleges it to be in this case, then you need not go any further, and your verdict will be for the defendant. But if you should find that the contract was as is alleged on the part of the plaintiff, that Mr. Shaffer agreed

to pay her $3,000 for this property, that he never paid it, except some payments on account of interest, and that the money is still unpaid, then, as I say, we come to a second proposition, and that is with reference to the statute of limitations.] [3]

[The case as I said to you at the outset is one of considerable importance, and you should give it careful consideration. It would be very unjust to compel this dead man's estate to pay this claim to Mrs. Henry unless it is due to her, unless she satisfies you by a fair weight and preponderance of the testimony that the contract was to pay her this $3,000 as a balance of the consideration for this conveyance in 1886, that it has never been paid, that it is still due, and that the decedent, Mr. Shaffer, in his lifetime, and within six years of the bringing of this suit, acknowledged its obligation by clear and unequivocal language, promised to pay it or acknowledged in such a clear and unequivocal way that a promise to pay would be implied. On the other hand, if he got this property from these people and did agree to pay $3,000 to Mrs. Henry with interest, and never paid it, and Mr. Shaffer acknowledged his obligation within six years of the bringing of the suit, so as to satisfy the rules of law which I have laid down to you upon that subject, then of course she ought to get the money and ought to recover it. It is a question of fact for you to determine under the instructions which I have given you. And, gentlemen of the jury, I hope you will give it the very best consideration and try to arrive at the truth so your verdict will be the very best judgment you are able to bring on this question. Boiled right down it is, did Mr. Shaffer buy this property from these people for $4,500, and did he agree to pay a balance due, after paying other claims, of $3,000 to Mrs. Henry in 1886? Is that due? accrued; and that the suit was not brought until after John Shaffer died. And as I said before, they call our attention to the financial condition of John Shaffer, that he was abundantly able at any time to pay his debts; and they claim that an inspection of the letters of Mrs. Henry would tend to show that she was in need of money from time to time. Now, these are legitimate circumstances for you to also take into consideration in passing upon this question. Do you believe the testimony of these witnesses,· Mr. Hoffman, Mr. Kiple and Mr. and Mrs. Widdowfield? If you do believe there was

such a contract, do you believe the testimony of Mrs. Widdow-
field and Mr. Hoffman, and do you find from their testimony
that the bar of the statute of limitations has been tolled or re-
moved by their evidence, applying the rules which I have laid
down to you? If you do, of course she is entitled to your ver-
dict; if you do not, if she has failed to satisfy you of these
allegations by the fair weight and preponderance of the testi-
mony, then of course the defendant is entitled to your ver-
dict.] [9]

[But in order to bar the effect of the statute it is not essen-
tial that there should be an actual or express promise to pay;
if there is a clear, distinct and unequivocal acknowledgment
of the debt, consistent with a promise to pay, the law will
imply the promise. The acknowledgment, in order to toll the
bar of the statute, must be clear and unequivocal, unambiguous
and express, so distinct and palpable in its extent and form as
to preclude hesitation as to the debtor's meaning, or the partic-
ular debt to which it applies, and must include a recognition
that the debt is still due to the plaintiff.] [15]

Verdict and judgment for plaintiff for $3,630. Defendant
appealed.

*Errors assigned* were (1) ruling on evidence, quoting the bill
of exceptions; (2, 3, 9, 15) above instructions, quoting them.

*Thomas F. Wells* and *S. B. Price*, with them *James F. Bell*,
for appellant.—Parol evidence as to the consideration was in-
admissible: Cunningham v. Shaw, 7 Pa. 401; Stump v. Hut-
chinson, 11 Pa. 533; Clark v. McAnulty, 3 S. & R. 371; Wil-
kinson Mfg. Co. v. Welde, 196 Pa. 508.

It is not disputed that a mere acknowledgment if the debt be
identified properly, etc., made before the statute has begun to
run, bars the running of it for six years from the time of such
acknowledgment. It is contended, however, that when once
the statute has run, and the claim has been barred, that while
the original debt may be a sufficient consideration for a new
promise to pay it, it must be a new promise and nothing less.

The reason is obvious. In the one case there is an existing
liability, the claim is not stale and no right of the creditor has
been lost. In the other case the claim is a stale one, no right

to demand or collect it exists to the creditor, while to the debtor has accrued the valuable right which the statute of limitations gives.

In order to relieve the claim of a plaintiff from the effect of the statute of limitations, there must be a clear and definite acknowledgment of the debt, a specification of the amount due, or a reference to something, by which such amount can be definitely and certainly ascertained, and an unequivocal promise to pay: Miller v. Baschore, 83 Pa. 356; Grier v. Northern Assurance Co., 183 Pa. 334; Kyle v. Wells, 17 Pa. 286; Lowrey **v.** Robinson, 141 Pa. 189; Palmer v. Gillespie, 95 Pa. 340.

*M. J. Martin* and *Joseph O'Brien*, with them *M. E. Mc-Donald* and *John R. Edwards*, for appellee.—All the evidence was for the jury including the letters between the parties : Miller v. Fichthorn, 31 Pa. 256; Sidwell v. Evans, 1 P. & W. 386; Harper v. Kean, 11 S. & R. 280; McGee v. Northumberland Bank, 5 Watts, 33.

Parol evidence was properly admitted by the judge to prove a consideration other than that expressed in the deed: Jack v. Dougherty, 3 Watts, 151; Audenreid's App., 89 Pa. 114; Nichols v. Nichols, 133 Pa. 438; Rimestone v. Reifsnyder, 4 Pa. Superior Ct. 78; Buckley's App., 48 Pa. 491; Baltimore & Philadelphia Steamboat Co. v. Brown, 54 Pa. 81.

The rule that the evidence to alter or reform a written instrument must be clear, precise and indubitable, is not applicable to the case at bar, as there was no attempt to alter or reform the deed offered in evidence: Honesdale Glass Co. v. Storms, 125 Pa. 268; Shepler v. Scott, 85 Pa. 329.

The character and quantity of the evidence was sufficient to remove the bar of the statute of limitations and revive the debt: Palmer v. Gillespie, 95 Pa. 340; Kensington Bank v. Patton, 14 Pa. 479; Yaw v. Kerr, 47 Pa. 333; Wesner v. Stein, 97 Pa. 322; Lawson v. McCartney, 104 Pa. 356; Shaeffer v. Hoffman, 113 Pa. 1; Keener v. Zartman, 144 Pa. 179.

OPINION BY MR. JUSTICE DEAN, October 13, 1902:

John Shaffer, of whose estate Anna F. Zurflieh, defendant and appellant, is administratrix, was for many years prior to

his death, in April, 1898, a retail merchant in the borough of
Dunmore, Lackawanna county.  He was a man of considerable
means, possessed of real estate and securities approximating in
value, $50,000.   Joseph Henry and his wife, Mary Henry, were
also residents of the same borough and customers at the store
of Shaffer; Henry owned a dwelling house and lot, of the
value of $2,000 to $4,500, according to the conflicting testi-
mony of witnesses on one side or the other.   The husband was
a man of dissolute habits and was incumbering his property.
Shaffer was a friend of the wife and up to December 20, 1886,
had extended to the family a credit on book account of about
$1,500.   On that day the husband and wife conveyed to him
the dwelling and the lot where they lived, called the Brook
street property.   The consideration named and receipted in
the deed was $2,500.   The wife alleged, that this was only
part of the consideration ; that at the time she joined her hus-
band in the execution and delivery of the deed, he, Shaffer,
promised to cancel the store book account, pay some other
small debts owing by her and her husband to third persons,
and in addition, at the expiration of one month, pay to her
$3,000 in money.   On this promise this suit was brought on
May 24, 1899.   The alleged promise was stoutly denied by
defendant, who averred, that the only consideration was that
expressed in the deed, and that this had been fully paid by
Shaffer in his lifetime and on or about the date of the convey-
ance.   As a further plea, the defendant set up the statute of
limitations, to which last plea, plaintiff replied, a new promise to
pay made within six years before suit brought.

There were many witnesses called whose testimony and a
number of letters written to her by Shaffer, tended to establish
her claim, and there was much evidence, both positive and in-
ferential, adduced by defendant in denial of it.

The learned judge of the court below in a very careful and
impartial charge submitted the conflicting evidence to the jury
who found for the plaintiff.   The court afterwards, in an opin-
ion filed, overruled a motion for a new trial and entered judg-
ment on the verdict.   We have now this appeal by defendant,
with fifteen assignments of error.

The first to fourteenth assignments, inclusive, complain, either
of the refusal of the court to charge, that the parol evidence

adduced by plaintiff to sustain the oral promise to pay $3,000 to Mrs. Henry in one month from the delivery of the deed as part of the consideration was wholly insufficient to establish such promise, or of the admission of incompetent and irrelevant evidence to prove the old promise or the new one after the statute had barred the claim.

We do not think the evidence, if believed by the jury, was insufficient. The consideration expressed in the deed and in the receipt appended to it was $2,500. The plaintiff sought to prove that the real consideration was $4,500; presumptively, the $2,500 was the entire purchase money. But this presumption can be overcome by parol evidence establishing other considerations. Undoubtedly, parol evidence would not be admitted or permitted to contradict or vary the written covenants, in the absence of fraud or mistake, but this rule does not apply to parol evidence to vary or contradict the written expression of the consideration. At an early day the rule was enforced against any attempt to vary or contradict even this, but of later years, in this particular, the rule has been almost wholly departed from or relaxed. See a full discussion of the whole subject by Justice KENNEDY in Jack v. Dougherty, 3 Watts, 151, a case decided by this court in 1834. This is the leading case, and it has been followed, almost without variation since in a multitude of cases, all holding that the consideration expressed is only presumptive evidence that it is the real consideration, and that the presumption may be overcome by parol evidence showing another or greater consideration. The reason for relaxing the general rule in this particular is stated to be, that a change in or contradiction of the expressed consideration, touches not the covenants of grantor and grantee in the deed, and neither limits nor enlarges the grant. Although the authorities have settled, that the real consideration in the case before us can be proven by parol, many of the cases are not so pointedly applicable to the facts here, for in most of them the consideration was merely nominal, such as $1.00, or love and affection, while the parol evidence established a money consideration or the relinquishment of a valuable right; this larger or enhanced consideration was not inconsistent with that expressed; it only added to it. In the case before us, the $2,500, at least approximately, was the value of the property; that

proven by parol, $4,500, to a certain extent, is inconsistent with the sum expressed; but none of the cases make any exception because of this apparent inconsistency between the written and parol consideration, and we cannot make one here. It was, therefore, competent for plaintiff to prove by parol a greater consideration than that nominated in the deed. Was plaintiff's evidence for that purpose sufficient? We think it was, if believed by the jury. We might not have credited it, but our functions are not those of a jury. While no reason is given why this additional $2,000 was not put in the deed, yet two witnesses, John Hoffman and Ferguson Kiple, testify, that they heard the bargain made and heard Shaffer expressly promise to Mrs. Henry that he would pay her within one month $3,000 in addition to the outstanding debts he would pay, and his own debt which he would have canceled; further, that he would pay her interest on the $3,000 until the principal was paid; there is then the testimony of Thomas and Ida Widdowfield to whom he distinctly acknowledged that he owed to Mrs. Henry $3,000 on the Brook street property and was going to pay it soon. This was followed by a number of letters from Shaffer to Mrs. Henry, some of them containing considerable amounts of money with promises of further payments. While not expressly repeating the original promise, they are in accord with it and to a degree corroborative of it. It is more than insinuated in the argument of appellant, that the letters, the payments and the promises, are suggestive of a meretricious relation between Shaffer and the plaintiff and are entirely reconcilable with the theory of an unlawful consideration. It is sufficient for us to say, that such a suggestion was not made at the trial in the court below; no request was made for instructions to the jury on that subject, nor so far as appears, was it touched upon in the argument to them. We do not raise questions de novo but review those tried and considered in the court below; therefore, it is not necessary for us to consider further this subject.

The court properly, in this guarded language, submitted the evidence to the jury:

"As I say the first proposition is, was the conveyance made for the consideration recited in the deed, to wit: $2,500? The presumption is that it was, as I said to you, and unless the

plaintiff has rebutted that presumption, she fails in her action, and your verdict must be for the defendant, and that is the end of the case.   And so the burden is on the plaintiff to satisfy you by the character of evidence which I have called your attention to, that is to say, by a preponderance of the testimony—first, that the agreement was as she contends that the consideration would be $4,500, and that the balance due her after the cancelation of certain debts and the paying of certain outstanding claims was $3,000 ; that is, she must prove that there was such a bargain at that time in December, 1886 ; that is the first thing for her to prove."

The attention of the jury was then called to all the material evidence on each side.   We can detect no error in the charge, nor can we discover any erroneous ruling on the admission or rejection of testimony.   Therefore, the first fourteen assignments of error are overruled.

The fifteenth assignment raises the question, whether the plea of the statute of limitations was sustained by the evidence.   The suit was brought May 24, 1899 ; the original oral promise to pay the $3,000 was made December 20, 1886, nearly thirteen years before, and of course the statute was a bar unless there was a new promise within six years before suit brought.   If the debt established by the original promise remained unpaid, it was still a debt and a sufficient consideration to support a new promise.   Plaintiff alleges such new promise was made.   In Palmer v. Gillespie, 95 Pa. 340, we said :

"A clear, distinct and unequivocal acknowledgment of a debt is sufficient to take a case out of the statute.   It must be an admission consistent with a promise to pay.   There must not be any uncertainty as to the particular debt to which the admission applies.   It must be so distinct as to remove hesitation as to the debtor's meaning."

This is the substance of our ruling in very many cases.   We need not advert to evidence of frequent promises outside the six years before suit ; we only call attention to the testimony of but two witnesses.   Ida Widdowfield, daughter of plaintiff, testified that she was present at an interview between her mother and Shaffer in 1896, that her mother said to him that she came to see him about the money, $3,000 and interest; he said, " I admit I owe you $3,000 and interest ; I have paid you

in part, which is between $200 and $300 of the interest, and I will pay you $3,000 and the interest, which amounts to about $1,500." She testified that this conversation referred to the Brook street property. She further testified that she heard a like conversation between them in 1897, and then he promised to pay the $3,000 and interest on the next first of April. That in 1898 she heard her mother say to Shaffer, " When are you going to pay me the $3,000 you owe on the Brook street property and the interest?" He said, " I know I owe you the $3,000 and the interest, which I will pay $2,000 of it in June and the balance, which was $1,680, the first of January."

Thomas Widdowfield testified that in July, 1897, Shaffer told him to tell Mrs. Henry the next time he wrote to her, that he, Shaffer, would pay her the $3,000 he owed her on the Brook street property with the interest in October. Taking these two statements as credible, which the jury must have done, Shaffer distinctly specified and acknowledged the old debt on the purchase money of the Brook street property and promised to pay it at a definite time. The letters of Shaffer to plaintiff, fourteen in number, run in date from November 6, 1896 to March 17, 1897 ; while not distinct acknowledgments of any particular debt or specific promises to pay a particular debt, all accord in character with the specific promises testified to by these witnesses. They were not written instruments for interpretation by the court, but a part of a course of conduct by Shaffer towards plaintiff made up of oral and written promises and asseverations of regard for her, which drew the whole to the jury for their interpretation. From the evidence the jury might find in the words of Palmer v. Gillespie, supra, " A clear, distinct and unequivocal acknowledgment of a debt; . . . . one with no uncertainty as to the particular debt . . . . so distinct as to remove hesitation as to the debtor's meaning." Besides, from the testimony, they were warranted in finding an absolute promise to pay at a fixed day.

The able argument of appellant's counsel, that a greater measure of proof is required to toll the running of the statute after it had once become operative, than to raise a new promise before the expiration of the six years, is not without merit. It is a point not raised or discussed, so far as we have discovered in any of the adjudicated cases. For example, if a new promise

to pay be made five years after a debt be due, the effect would be to extend the time in which the statute could not be successfully pleaded, six years from the date of the new promise, or eleven years from the date the debt was first demandable. Here, the statute had barred the debt more than four years before the date of the new promise; it might well be argued, that in the first case, the debtor would not hesitate to renew the old promise, for the new would make the debt no more effective for collection than the old, which was still in force; but in the second case, suit is effectually and forever barred unless the new promise be made; the demand is not enforceable; it is stale unless freshened by the voluntary act of the debtor. But while this is the case, the law makes no change in the measure of proof between the promise made before the statute has run and the one made afterwards, and it would only disturb the well settled rule were we to make a change now. We can only say that as an argument on evidence, the improbability of a promise made while the debt is still within the statutory period is less than of one made after the claim is completely barred.

After a careful examination of the evidence and the law bearing upon it, we find no error that calls for a reversal; therefore, the judgment is affirmed.