## Keck's Estate.

*George B. Balmer*, for exceptant; *Paul D. Edelman*, for accountant.

MARX, P. J., May 25, 1929.—The exceptions here filed to our adjudication of March 30, 1929, raised the single question of the bar of the statute of limitations to an indebtedness of the exceptant to the decedent.

Inventoried as assets of this decedent's estate, *inter alia*, were two promissory notes given by W. H. Sharadin, the exceptant, to the decedent, dated Sept. 15, 1921, and Nov. 15, 1921, respectively. The former promised payment of the sum of $50 on demand; the latter, the sum of $200 on demand.

The decedent died on April 11, 1928. Neither note bore the endorsement of interest payment nor any other notation indicating a renewal, extension or novation of the obligations. The notes were inventoried and appraised and were included in the balance for distribution as shown by the account upon which our adjudication was based. The maker of these notes, W. H. Sharadin, took, under the terms of the will of decedent, a pecuniary bequest of $1500, one-fourth of the residue of the estate. Against his distributive share of the estate, we charged, *inter alia*, the aforesaid two notes, with interest. Exceptant alleges error in this, and supports his allegation by pleading the bar of the statute of limitations. The accountant, answering the plea of the bar of the statute of limitations, placed in evidence the following writing, signed by the exceptant and found among the possessions of the decedent at the time of his death:

"250.00                                                                 Aug. 14-1923-

"Notes dated Sept. 15, 1921, and Nov. 15, 1921, and on which interest has not been paid to date, the endorser relinquishes all his claim on his furniture, brick-a-brack or whatever said apartment No. 3, at 1006 Washington Street, Wilmington, Del., may contain—to the holder of these notes—

"(Sgd.)     W. H. SHARADIN."

He also placed in evidence a letter written by the exceptant to the decedent, his uncle, under date of Aug. 14, 1923, the relevant part of which reads: "Uncle Frank—Am attaching form to the two notes—and on which you are fully covered."

It will be noted that the letter bears the same date as the writing before recited, and it is but reasonable to conclude that the one accompanied the other, and that the writing is the "form" to which reference is made in the recited portion of the letter.

Relative to the question thus raised, the limit and applicability of the statute of limitations and the bar thereof, we quote from the case of Palmer *v.* Gillespie, 95 Pa. 340, 344: "It is not essentially necessary that the promise be actual or expressed, provided the other necessary facts are shown. A clear, distinct and unequivocal acknowledgment of a debt is sufficient to take a case out of the operation of the statute. It must be an admission consistent with a promise to pay. If so, the law will imply the promise without its having been actually or expressly made. There must not be uncertainty as to the particular debt to which the admission applies. It must be so distinct and unambiguous as to remove hesitation in regard to the debtor's meaning."

Applying the rule thus established to the facts of this case, we note that at the beginning of the writing of Aug. 14, 1923, exceptant specified the sum of $250. He refers to notes dated Sept. 15, 1921, and Nov. 15, 1921, the aggregate of which was $250. Exceptant further stipulates that no interest had been paid to that date, Aug. 14, 1923. He relinquishes his claim on furniture, etc., contained in his apartment in Wilmington, Del., to the holder of these notes. Having done this, he states, in his letter of the same date, that the holder of the notes is fully covered. What is meant by the term "fully covered" need not be left to speculation. This was a letter by a nephew to his uncle; no technical words or expressions were used. The entire letter is couched in such ordinary language as usually passes between an uncle and his nephew on friendly terms. It cannot be asserted that the exceptant intended a sale or conveyance of the furniture, for there is no evidence of any offer or acceptance thereof nor mention made of such disposition of the indebtedness to which exceptant refers. So far as any term or expression contained in the letter or the written statement is concerned, the indebtedness remained

undisturbed and continued, with this exception, that where, before, the payee of the notes held them without any collateral or outside protection whatsoever, he was now, in consequence of exceptant's relinguishment of claim on furniture, "fully covered," collaterally secured.

Our conclusion, from a careful examination of the relationship of the parties, the condition of the described notes, and the language of the letter and other writings of Aug. 14, 1923, is that what exceptant tendered and the decedent accepted as of Aug. 14, 1923, was an assignment of exceptant's interest in the furniture, to be held by the payee of the notes as collateral security for the payment of the same.

Having thus concluded, the question arises whether such an assignment of collateral on Aug. 14, 1923, tolled the operation of the statute of limitations. There is sufficient here to satisfy us that the two notes, to which reference is made in the writing of the exceptant, are the two notes which we charged against and deducted from his distributive share. Their identity has been fully and satisfactorily established.

Exceptant in his argument contends that the giving of collateral security for the payment of a note and the continued holding of collateral security will not interfere with the running of the statute of limitations against the principal indebtedness. He bases his contention principally upon the decision of our Supreme Court in Hartranft's Estate, 153 Pa. 530. An examination of the facts of that case discloses that the collateral there given was given at the time of the execution and delivery of the note, and it was held that the mere continued holding of the collateral could not be construed an acknowledgment of the indebtedness by the maker. From the time of the delivery of the note and the collateral there was no further or additional move on the part of the maker. In the instant case, circumstances are, however, different. Had this collateral been delivered on either Sept. 15th or Nov. 15, 1921, there can be no doubt that the bar of the statute of limitations would intervene and prevent the collection, and, consequently, the charging against exceptant's distributive share of the indebtedness. Here, however, there was a distinct acknowledgment on the part of the maker of the notes. On Aug. 14, 1923, referring to the notes, admitting failure to pay any interest whatsoever, he delivers collateral so that the payee of the notes may be "fully covered."

This case is ruled, rather, by the principle laid down in Souder's Estate, 169 Pa. 239. There the debtor owed the decedent, in 1879, the sum of $7000. In March, 1882, the debtor transferred to the decedent 140 shares of stock. There, as here, the debt would have been barred by the operation of the statute of limitations, had it not been for the intervention of the assignment and transfer of this stock. Relative to the same, the lower court said (page 244) : "The debt is not barred by the statute. The transfer of the Chester stock in 1882 was a clear and distinct acknowledgment of the debt, from which a promise to pay was reasonably deducible (Palmer v. Gillespie, 95 Pa. 340), and it took place within six years of the death of the testatrix."

This language of the court below is adopted by the Supreme Court on appeal, quoted on page 248.

From this decision and theory we have found no variance. Our conclusion is that there was no error in charging the distributive share of the exceptant with the amounts due on these two notes.

Now, May 25, 1929, the exceptions are accordingly dismissed and the adjudication is confirmed absolutely.

From Charles K. Derr, Reading, Pa.